**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

ADVANCED EXTERIORS, INC.,

    Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,
USAA CASUALTY INSURANCE COMPANY,
USAA GENERAL INDEMNITY COMPANY, AND
GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff Advanced Exteriors, Inc. ("Advanced Exteriors" or "Plaintiff"), through its attorneys, Daly & Black, P.C. and Gray LLC, respectfully submits the following Complaint and Jury Demand:

**INTRODUCTION**

1. Defendants United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, and Garrison Property and Casualty Insurance Company (collectively, "USAA" or "USAA Companies") have consistently and without exception unreasonably denied payment for roofing material removal labor when processing insurance claims for loss from storm damage.

2. Colorado sits in "hail alley," where catastrophic storms with large hailstones severely damage roofs on properties in the storms' paths.

3. Homeowners in Colorado pay higher premiums than in other states for insurance protection from the damaging effects of hail.

4. In recent years, Colorado has ranked second only to Texas for the total number of hail loss claims filed by property owners.

5. When a home's roof suffers hail damage, roofing work to repair and replace roofing material must be performed by experienced and skilled roofing contractors.

6. In most cases, roofing contractors are engaged by homeowners to complete the roofing work.

7. The roofing contractors work directly with USAA, or other insurance companies whose policies cover the damage, to determine the scope of work that is covered by the homeowner's policy, and the amount USAA or other insurance company will pay the contractor for the roofing work.

8. In an effort to unjustly increase profits, USAA purposefully and unreasonably withholds payments for benefits that are covered under their policies.

9. Roofing contractors suffer the economic damage, since the homeowner is only asked to pay their deductible towards the cost of repairs.

10. In particular, USAA uniformly denies payment for the required skilled roofing labor to remove roofing materials.

11. Roofing contractors hire crews of skilled workers to work at dangerous heights with construction materials unique to roofing.

12. Roofers are twice as likely to be injured on the job as the average construction worker. Roofing work also requires precise and careful skill specific to roofing work.

13. Only specialized workers with roofing skills and experience are hired for roofing labor.

14. Accordingly, contractors pay roofers a higher-skilled labor wage.

15. Those higher wages are paid regardless of whether they are removing roofing material or installing it, since both require the same skill and implicate the same risk.

16. A roofer's workspace is regularly at least 30 feet off the ground, and their job requires them to know how to precisely work with a variety of roofing materials, to avoid damaging any intact roofing material, and to use harnesses and cables for safety.

17. Contractors also pay higher workers compensation premiums for roofing labor because of the increased risk of injury.

18. Despite the unique skill and risk associated with roofing labor, USAA does not pay roofing contractors for that skilled roofing labor when the labor is designated as "removal" of roofing material by its estimating software.

19. Instead, USAA pays a significantly lower labor rate that is applicable to general demolition (such as knocking down walls) when the labor is designated as removal.

20. Yet the same roofing workers, facing the same risk and using the same skills, perform both removal and installation of roofing materials.

21. The contracting companies pay the workers the same higher wages, and pay the same higher workers compensation premiums, for both removal and installation labor.

22. There is no reasonable basis for denying roofing contractors full payment for roofing removal labor.

23. This unreasonable denial is actionable under Colorado's bad faith law.

**COLORADO BAD FAITH LAW**

24. Under Colorado law, C.R.S. 10-3-1115 and 1116, plaintiffs in first-party insurance claims can recover double damages, costs and attorney fees if an insurer unreasonably delays or denies payment of benefits.

25. Specifically, the bad faith statute provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." C.R.S.10-3-1115(1)(a).

26. Under C.R.S. §10-3-1115 and Colorado law interpreting this statute, neither a contractual relationship with the insurance company nor an assignment of claims is required to bring a statutory bad faith claim as a "first-party claimant." In other words, claims for statutory bad faith may be brought by an insured's contractor.

**JURISDICTION AND VENUE**

27. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), because (i) at least one member of the class is a citizen of a state different from Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of costs and interests, and (iii) none of the exceptions under that section applies to this action.

28. In the three-year period from 2017 to 2019, Colorado homeowners made 380,066 claims due to hail loss. Extrapolating from those numbers, there are approximately 250,000 homeowner hail loss claims in Colorado in the last two years.

29. USAA benefits from an 11.6% market share of residential insurance policies and a 5.8% market share of commercial property insurance policies in Colorado.

30. An average residential roof size in Colorado is approximately 2,100 square feet (or 21 100-square foot "squares").

31.     USAA includes a demolition labor rate for removal of roofing material in its estimates that is approximately (and in some cases more than) $75 per square less than the skilled roofing labor removal rate.

32.     If even just a quarter of the over 250,000 damaged residential roofs require complete replacement, Plaintiff and the class stand to recover damages of over $23 million in a two-year class period for USAA's unreasonable denial of payment for roofing material removal labor.

33.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred here, and under 18 U.S.C. §1965(a) because Defendants transacts business or is otherwise found in this district.

## PARTIES

34.     Plaintiff Advanced Exteriors is a Colorado corporation with a principal office street address of 2200 S. Valley Highway, Denver, Colorado 80222.

35.     Plaintiff Advanced Exteriors is a citizen of Colorado.

36.     Defendants USAA Companies are Texas corporations each with a principal place of business at 9800 Fredericksburg Road, San Antonio, Texas 78288

37.     Defendants USAA Companies are not citizens of Colorado.

## FACTUAL ALLEGATIONS

38.     For many years, Plaintiff has performed work pursuant to hail damage claims by homeowners who are covered by USAA insurance policies.

39.     For every single one of those claims, USAA unreasonably has denied and continues to deny payment for skilled roofing labor for removal of roofing materials

40. USAA instead has paid a much lower demolition labor rate for roofing material removal labor.

41. USAA uses a construction estimating software called Xactimate, the leading construction estimating software used to estimate the cost of roofing work.

42. The Xactimate program contains default payment rates for various categories of work.

43. When an adjuster at USAA (or anyone else using the Xactimate program) selects roofing material <u>installation</u> or <u>replacement</u> as the category of work, Xactimate defaults to skilled roofing labor, and automatically populates the higher rate for skilled roofing labor into the estimate.

44. By contrast, when roofing material <u>removal</u> is selected as the category of work, Xactimate defaults to the demolition labor rate, automatically populating the lower rate for general demolition labor.

45. The adjuster has the option to change the default rate auto-populated by Xactimate.

46. The same workers perform the installation and the removal of roofing material, using the same specialized roofing skills, encountering the same dangers, and being paid the same higher wages.

47. Yet USAA includes in all of its estimates a significantly lower payment rate for removal labor compared to installation labor.

48. Below is a screenshot of the Xactimate program's default labor rates:



49. When processing each and every roofing claim for hail damage, USAA denies contractors payment for the difference between the skilled roofing labor and demolition labor rate for the work of removing roofing material.

50. There is no reasonable basis for denying payment for skilled roofing labor for removal of roofing material.

51. For example, Plaintiff performed roofing work for hail loss for a property in Parker, Colorado with a date of loss of July 21, 2019 ("Parker Claim").

52. USAA's estimate of covered work for the Parker Claim was dated December 16, 2019.

53. USAA's estimate contained the following line item for roofing material removal:

| Description | Quantity | Unit Price | RCV | Depreciation | ACV |
|---|---|---|---|---|---|
| 1. Tear off, haul and dispose of comp. shingles – Laminated | | | | | |
| | 27.98 SQ | 56.86 | 1,590.94 | (0.00) | 1,590.94 |

54. For removal of 27.98 SQ (or "squares"), USAA agreed to pay a total $1,590.94, with a demolition labor rate of $56.86 per square.

55. The skilled roofing rate for removing roofing material would have been $166.78 per square in Parker, Colorado, on the date of the estimate.

56. Accordingly, the total payment to Plaintiff for removal of 27.98 squares of roofing material, which USAA admitted was a covered benefit, should have been $4666.50.

57. Therefore, **Plaintiff was denied $3,075.56** for the Parker Claim.

7

58.     Similarly, Plaintiff performed roofing work for hail loss for a property in Denver, Colorado with a date of loss of July 20, 2019 ("Denver Claim").

59.     USAA's estimate of covered work for the Denver Claim was dated February 12, 2020.

60.     USAA's estimate contained the following line item for roofing material removal:

| Description | Quantity | Unit Price | RCV | Depreciation | ACV |
|---|---|---|---|---|---|
| 1. Tear off, haul and dispose of comp. shingles - 3 tab | | | | | |
| 17.15 | 17.15 SQ | 54.67 | 937.59 | (0.00) | 937.59 |

61.     USAA agreed to pay a total of $937.59 for removal of 17.15 squares, based on a demolition labor rate for removal of roofing material of $54.67.

62.     The skilled labor rate for removing roofing material would have been $166.82 per square in Denver on the date of the estimate.

63.     Accordingly, the total payment to Plaintiff for removal of 17.15 squares of roofing material, which USAA admitted was a covered benefit, should have been $2,860.96.

64.     Therefore, **Plaintiff was denied $1,923.37** for the Denver Claim.

65.     Similarly, Plaintiff performed roofing work for hail loss for a property in Colorado Springs, Colorado with a date of loss of August 5, 2020 ("Colorado Springs Claim").

66.     USAA's estimate of covered work for the Colorado Springs Claim was dated May 3, 2021.

67.     USAA's estimate contained the following line item for roofing material removal:

| Description | Quantity | Unit Price | RCV | Depreciation | ACV |
|---|---|---|---|---|---|
| 23. Tear off, haul and dispose of comp. shingles - Laminated | | | | | |
| | 42.63 SQ | 56.42 | 2,405.18 | (0.00) | 2,405.18 |

68.     For 42.63 squares, USAA agreed to pay a total $2,405.18, with a demolition labor rate of $56.42 per square.

8

69. The skilled labor rate for removing roofing material would have been RFG $127.78 per square in Colorado Springs on the date of the estimate.

70. Accordingly, the payment to Plaintiff for removal of 42.63 squares of roofing material, which USAA admitted was a covered benefit, should have been $4,447.26.

71. Therefore, **Plaintiff was denied $3,042.08** for the Colorado Springs Claim.

## CLASS ACTION ALLEGATIONS

72. Plaintiff realleges and incorporates by reference all prior allegations of this Complaint as if fully set forth herein.

73. Plaintiff seeks certification of a Class as defined below, pursuant to Fed. R. Civ. P. 23:

> All persons or entities who performed roofing work in Colorado pursuant to a claim for covered roof damage under a USAA insurance policy, and were denied proper roofing removal payments by USAA in the period of July 2, 2019, to the present.

Excluded from the Class are (i) any judge(s) presiding over this action and members of their families; (ii) Defendants' subsidiaries, parents, successors, predecessors, and any entity in which USAA or its parents have a controlling interest and their current or former employees, officers and directors; (iii) persons who properly execute and timely request exclusion from the Class; and (iv) the legal representatives, successors or assigns of any such excluded persons.

74. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but upon information or belief, there are hundreds of contractors who have done roofing

9

work in Colorado pursuant to USAA insurance policies. Members of the Class can be identified through USAA's records.

75. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. These common questions include but are not limited to:

   i. Whether USAA denied payment for skilled roofing labor for roofing material removal.

   ii. Whether USAA's denial of payment for skilled roofing labor for roofing material labor was unreasonable.

   iii. Whether USAA was unjustly enriched.

   iv. Whether Plaintiff is entitled to injunctive relief.

   v. Whether Plaintiff and the Classes are entitled to damages.

   vi. Whether Plaintiff and the Classes are entitled to any other relief.

76. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of USAA's uniform, wrongful conduct in denying payment for roofing material removal labor.

77. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Class and USAA has no defenses unique to Plaintiff.

78. **Appropriateness**: The class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered

by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by USAA's wrongful conduct. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from USAA's unlawful practices. Even if Class members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

79. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because USAA has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. USAA's practices challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these practices hinges on USAA's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

80. Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

## PLAINTIFF'S FIRST CLAIM FOR RELIEF
## VIOLATION OF C.R.S. 10-3-1115 AND 1116
### (On behalf of Plaintiff and the Class)

81. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

82. At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

83. C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

84. USAA unreasonably delayed or denied payment of insurance benefits by:

    (1) failing to provide or delaying the payment of the actual, necessary, and reasonable funds to remove portions of damaged roof systems, where such removal is admittedly a covered benefit;

    (2) engaging in additional acts and omissions that may be discovered in the course of litigation.

85. USAA unreasonably denied and delayed payment in violation of C.R.S. §10-3-1115.

86. USAA is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees.

87. Under C.R.S. §10-3-1115 and Colorado law interpreting this statute, "on behalf of any first-party claimant" includes claims brought by an insured's contractor.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

88. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

89. USAA received the benefit of the difference between the skilled roofing labor and demolition labor rates for roofing material removal labor.

90. USAA's benefit was at the expense of Plaintiff and the Class.

91. It would be unjust for USAA to retain that benefit.

## PLAINTIFF'S THIRD CLAIM FOR RELIEF
## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
### (On behalf of Plaintiff and the Class)

92. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

93. USAA's payment of a lower demolition labor rate for roofing material removal, instead of the skilled roofing labor rate, is an unreasonable denial of a covered benefit and is a violation of C.R.S. 10-3-1115 and 1116, as discussed above.

94. Plaintiff seeks a declaratory judgment that USAA's practice of denying payment to contractors for roofing material removal labor is a violation of Colorado state law, C.R.S. 10-3-1115 and 1116.

95. Plaintiff seeks a permanent injunction enjoining USAA from continuing to engage in the unlawful practice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief against USAA Companies as follows:

a. Certifying this case as a class action, designating Plaintiff as Class Representative and his attorneys as Class Counsel;

b. Double damages, court costs, and reasonable attorney fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

c. An award of pre- and post-judgment interest;

d. Costs and expenses;

e. A declaratory judgment that USAA's failure to pay is unlawful;

f. Equitable and injunctive relief to Plaintiff and the Class, including a permanent

injunction, restitution, disgorgement, and an accounting of all revenue gained by USAA through its unlawful conduct; and

      g.    Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted July 2, 2021.

s/ Richard D. Daly
*Richard D. Daly*
Daly & Black, P.C.
John Scott Black
Melissa Wray
2211 Norfolk Street, Suite 800
Houston, TX 77098
Telephone: (713) 655-1405
Email:  rdaly@dalyblack.com
        jblack@dalyblack.com
        mwray@dalyblack.com

and

/s/ William C. Gray
*William C. Gray*
Gray LLC
Nathalie E. Sar
17 N. State St., Suite 1600
Chicago, IL 60602
Tel: 312.967.3653
Email:  bgray@grayllclaw.com
        nsar@grayllclaw.com

*Attorneys for Plaintiff*